J-S03031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: L.A.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.G. AND B.G. | : | No. 962 WDA 2020 |

Appeal from the Order Entered August 27, 2020
in the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s): No. 113 of 2019

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.L.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.G. AND B.G. | : | No. 963 WDA 2020 |

Appeal from the Order Entered August 27, 2020
in the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s): No. 114 of 2019

BEFORE:   DUBOW, J., MURRAY, J. and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.:                 **FILED:  March 26, 2021**

A.G. (Mother) and B.G. (Stepfather) (collectively, Petitioners) appeal

from the orders entered on August 27, 2020, which denied their petitions to

terminate involuntarily the parental rights of C.K. (Father).  After review, we

reverse and remand.

Mother and Father are former spouses who separated in October 2015

and divorced in January 2017, due to Father's debilitating alcoholism.  N.T.,

7/22/2020, at 8-9, 71.  They had two children together, L.A.K., born in

---

[*] Retired Senior Judge assigned to the Superior Court.

September 2012, and A.L.K., born in March 2015 (collectively, the Children). Children reside with Mother. Significantly, it is undisputed that Father has not had contact with the Children since January 2016. *Id.* at 9-14, 43, 48, 55, 63, 74, 87, 111-17, 120-25, 132-35. A March 2016 child custody order provided that Father could exercise supervised partial physical custody of the Children at his own expense, but he never exercised or requested custody pursuant to that order. *Id.* at 10-12, 34-35, 41-42, 103.

Following her separation from Father, Mother began a relationship with Stepfather. *Id.* at 17, 35. Mother married Stepfather in July 2019. *Id.* at 7. Shortly thereafter, on October 23, 2019, Father filed a petition for modification of the March 2016 custody order. *Id.* at 94-95. Petitioners filed petitions to terminate involuntarily Father's parental rights to the Children on October 31, 2019, proposing that Stepfather adopt the Children.[1] A custody proceeding ensued, resulting in an order that Father could not reenter the Children's lives pending the resolution of the termination proceeding. *Id.* at 38-39, 92-96; Respondent's Exhibit D (December 18, 2019 custody order).

_____

[1] According to Petitioners, they had decided to seek involuntary termination of Father's parental rights by August 2019, but the process became delayed due to L.A.K.'s participation in football. N.T., 7/22/2020, at 20, 56-57. They also explained that Stepfather had a child from a prior relationship, and that they filed a petition to terminate the parental rights of that child's mother as well, so that Mother could adopt that child. *Id.* at 21, 25-26, 57. They maintained that the child's mother was difficult to locate and serve, which further delayed the process of seeking termination as to Father. *Id.* at 21, 48, 57.

The orphans' court conducted a hearing on the termination petitions on July 22, 2020, during which Petitioners, Father, and C.K. (Paternal Grandmother) testified.[2] In relevant part, Petitioners detailed Father's failure to contact the Children after January 2016, testifying that he did not see the Children in person, send letters, or call them on the phone. N.T., 7/22/2020, at 9-14, 43, 48, 55, 63. To Petitioners' knowledge, Father did not even try to contact the Children prior to filing his petition for modification of custody. **Id.** Petitioners maintained that L.A.K. had only a vague recollection of Father, and that A.L.K. did not remember Father at all. **Id.** at 22-23, 58. In contrast, they reported that the Children view Stepfather as the sole paternal figure in their lives and refer to him as their father. **Id.** at 22-25, 55-56, 59.

Father acknowledged that he had not had contact with the Children since January 2016, and that he had not attempted to contact the Children. **Id.** at 74, 87, 111-17, 120-25, 132-35. Father offered various explanations for this failure, stating first that he did not attempt to call the Children on the phone because Mother "wouldn't have addressed my calls anyway." **Id.** at 74, 114-15. Father next stated that he did not attempt to contact the Children because he did not want to traumatize them by entering and exiting their lives due to his relapses, and that he wanted to achieve a year of sobriety before reaching out. **Id.** at 87-88, 115-17, 120-25, 132-34. He asserted that he became

---

[2] The orphans' court appointed legal counsel and a guardian *ad litem* (GAL) to represent the Children at the hearing.

sober in October 2018 and filed his petition for modification of custody a year later, in October 2019. *Id.* at 75, 80, 94-95, 106. Finally, Father maintained that his alcoholism was financially devastating, and that he could not afford the cost of supervised partial physical custody of the Children, or even the cost of sending them a greeting card. *Id.* at 103-04, 116, 135. Father also presented the testimony of Paternal Grandmother to establish that he appeared to be sober, and that she babysat the Children and occasionally provided Father with pictures and information about them during the time he was absent from their lives. N.T., 7/22/2020, at 139-44.

Following the hearing, on August 27, 2020, the orphans' court entered an order denying the petitions to terminate involuntarily Father's parental rights to the Children. Petitioners timely filed separate notices of appeal on September 10, 2020, along with concise statements of errors complained of on appeal.

Petitioners now raise the following claims on appeal.

1. Was clear and convincing evidence presented to show that termination was warranted pursuant to 23 Pa. C.S.[] [§] 2511(a)(1), 2511(a)(2), and 2511(b)?

2. Did the [orphans'] court err in denying the termination of Father's parental rights despite clear and convincing evidence that Father's conduct for at least six months immediately preceding the filing of the petition evidenced a settled purpose of relinquishing parental claim to the child?

3. Did the [orphans'] court err in denying the termination of Father's parental rights despite clear and convincing evidence that Father's conduct for at least six months preceding the filing of the

- 4 -

petition evidenced that Father refused [or] failed to perform parental duties?

4. Did the [orphans'] court err in denying the termination of Father's parental rights despite clear and convincing evidence that the repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being?

5. Did the [orphans'] court err in denying the termination of Father's parental rights despite clear and convincing evidence that the causes of Father's incapacity, abuse, neglect or refusal cannot or will not be remedied by Father?

6. Did the [orphans'] court err in denying the termination of Father's parental rights by failing to give primary consideration to the developmental, physical and emotional needs and welfare of the child?

7. Did the [orphans'] court err in denying the termination of Father's parental rights by determining that Father's continued substance abuse issues were an environmental factor beyond Father's control?

8. Did the [orphans'] court err by failing to give any weight to the recommendations and opinions outlined by the [Children's] [GAL] and attorney?

Petitioners' Brief at 4-6 (suggested answers omitted).[3]

_____

[3] We note with disapproval that, while Petitioners purport to raise eight claims for our review, their brief contains only three distinct arguments, in violation of our Rules of Appellate Procedure. **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein[.]"). However, because this noncompliance with our Rules is not a substantial defect, and does not hinder our ability to conduct meaningful appellate review, we decline to dismiss this appeal, and we address Petitioners' claims on the merits. **See** Pa.R.A.P. 2101 ("[I]f the defects are in the brief . . . of the appellant and are substantial, the

We review Petitioners' claims in accordance with the following standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs the involuntary termination of parental rights. *See* 23 Pa.C.S. § 2511. It requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child [.]

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

---

appeal or other matter may be quashed or dismissed."); *Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 584 (Pa. Super. 2014) ("When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

In this case, the Petitioners requested that the orphans' court terminate Father's parental rights to the Children pursuant to subsections 2511(a)(1), (2), and (b). We need only agree with the court as to any one subsection of 2511(a), as well as subsection 2511(b), to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We focus our analysis on subsections 2511(a)(1) and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> \*\*\*
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

We begin with Petitioners' interrelated first, second, and third claims, in which they challenge the decision of the orphans' court to deny termination of Father's parental rights pursuant to subsection 2511(a)(1). To satisfy the

requirements of subsection 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008). The orphans' court must then consider the parent's explanation for his or her abandonment of the child, in addition to any post-abandonment contact. *Id.* This Court has emphasized that a parent does not perform parental duties by displaying a merely passive interest in the development of a child. *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005). Rather,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. **Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.**

*Id.* (emphasis added; citations omitted).

Here, Petitioners emphasize Father had no contact with the Children, and made no effort to have contact with the Children, from January 2016 until October 2019, when he filed his custody modification petition and Petitioners filed their termination petitions. Petitioners' Brief at 9-10, 13-20. While they

acknowledge that Father filed his custody modification petition within the six months preceding the filing of their termination petitions, they insist that this one display of effort cannot overcome Father's neglect of the Children. *Id.* at 20-21. Petitioners emphasize the principle, quoted above in *B.,N.M.*, that a parent may not avoid termination by waiting until a more suitable time to perform parental responsibilities. *Id.* at 17-19. Petitioners also contend that the orphans' court found Father was able to maintain contact with the Children through Paternal Grandmother. *Id.* at 19. Petitioners challenge this finding, explaining that Paternal Grandmother merely supplied Father with pictures and information, and that no actual contact occurred. *Id.* at 19-20.

The orphans' court explained its decision to deny termination of Father's parental rights pursuant subsection 2511(a)(1) as follows.

> Before finding sufficient grounds to terminate parental rights under [subs]ection 2511(a)(1), the court must consider more than whether the parent has not maintained contact for a six-month period prior to the filing of the petition to terminate rights. [*In re K.C.W.*, 689 A.2d 294 (Pa. Super. 1997).] Indeed, the court must also consider any barriers that a parent faced during said period and whether the parent exhibited reasonable firmness in his or her attempt to overcome those barriers. *Id.*

> In the instant case, the Court notes that, although Father did not visit with the [C]hildren for a substantial amount of time, his act of distancing himself from the [C]hildren was done with an eye towards what was in their best interest. Even though Father was not present to perform traditional parental duties, he testified that rebuilding a relationship with [the C]hildren was the main motivating factor in his quest to obtain sobriety. As of the date of the hearing, Father was reportedly paying $600.00 per month in child support to Mother. Father was able to maintain contact with the [C]hildren via Paternal Grandmother . . . until Mother forbade her from sharing any pertinent information with Father in

September 2019. Shortly after this change in circumstances, Father petitioned the court for modification of custody and attempted to make contact with the children himself.

For these reasons, the Court found that [Petitioners] failed to meet their burden under [subs]ection 2511(a)(1).

Orphans' Court Opinion, 10/23/2020, at 4-5.

The finding of the orphans' court that Father maintained contact with the Children via Paternal Grandmother is not supported by the record. It is undisputed that Father has had no contact with the Children since January 2016. N.T., 7/22/2020, at 9-14, 43, 48, 55, 63, 74, 87, 111-17, 120-25, 132-35. Paternal Grandmother testified that she merely provided him with pictures and information about the Children.[4]  *Id.* at 144. Father has not seen the Children in person, has not called them on the phone, and has not sent letters or gifts. *Id.* at 74, 87, 111-17, 120-25, 132-35. Father admitted this during his testimony. *Id.* More significantly, Father admitted that he did not even make any attempts to see the Children in person, call them on the phone, or send letters or gifts. *Id.* It appears that Father's only contribution to the Children's lives during this time was his payment of child support. However, Father admitted that even that was inconsistent. He explained, "[m]y employment was so spotty. There were so many stretches of, you know, I

---

[4] Even these updates were sporadic. Father testified that, until the summer of 2019, he had a poor relationship with Paternal Grandmother and only spoke to her "every now and then." *Id.* at 88-89.

might have been able to pay a little bit and nothing for a while." *Id.* at 98-99, 129-30.

While Father filed his petition for modification of custody on October 23, 2019, shortly before Petitioners filed the termination petitions on October 31, 2019, that does not excuse his failure to maintain contact with the Children. As we have explained, "[a]lthough it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the [orphans'] court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." *B.,N.M.*, 856 A.2d at 855. The fact that Father made one attempt to make contact after over three-and-a-half years of doing nothing does not demonstrate the sort of good faith interest and effort that the Adoption Act requires. Therefore, we conclude Father refused or failed to perform his parental duties during the six months preceding the filing of the termination petitions pursuant to subsection 2511(a)(1). *See id.* (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004)) ("There is no simple or easy definition of parental duties. … This affirmative duty encompasses more than a financial obligation; it requires continuing interest . . . and a genuine effort to maintain communication and association with the child.").

In its opinion, the orphans' court justifies Father's failure to perform his parental duties, reasoning that he faced "barriers" to maintaining contact with the Children and exhibited reasonable firmness in seeking to overcome those

barriers by working to obtain sobriety. Orphans' Court Opinion, 10/23/2020, at 4-5. We cannot agree. During the hearing, Mother testified that she lived in the former marital residence where Father himself used to live, that her phone number had remained the same since she was married to Father, and that she had not "blocked" Father on her phone. N.T., 7/22/2020, at 8, 13, 17. Father agreed that Mother's phone number had not changed. *Id.* at 97.[5] Moreover, the March 2016 custody order awarded Father supervised partial physical custody of the Children. *Id.* at 10-12, 34-35, 41-42. Father had every opportunity to maintain contact with the Children, but did not take even the most basic steps to do so, such as sending a card or calling them on the phone. Father's claim that he planned to contact the Children eventually, after he achieved a year of sobriety, did not excuse him from taking advantage of these opportunities. As Petitioners have argued, "[p]arental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *B.,N.M.*, 856 A.2d at 855. Thus, we conclude that the

---

[5] Father made one attempt to call Mother and speak to L.A.K. after the filing of the termination petitions. N.T., 7/22/2020, at 55, 61-62, 96-97, 129. His call went to voicemail, and Mother did not call him back. *Id.*

court committed an abuse of discretion by denying the petitions to terminate Father's parental rights pursuant to subsection 2511(a)(1).[6]

We next consider Petitioners' sixth, seventh, and eighth claims, in which they challenge the conclusion of the orphans' court that terminating Father's parental rights would not serve the Children's needs and welfare pursuant to subsection 2511(b). Given that the court found Petitioners did not meet their burden of proof pursuant to subsection 2511(a), it was not necessary for the court to address subsection 2511(b). Because the court addressed subsection 2511(b) nonetheless, we need not remand for the court to make the necessary findings, and we may proceed to the merits of Petitioners' claims. **Cf. In re Adoption of M.R.B.**, 25 A.3d 1247, 1260 (Pa. Super. 2011) (reversing as to subsection 2511(a) and remanding, "since the orphans' court did not engage in the needs and welfare analysis pursuant to [subsection] 2511(b)"). We apply the following analysis.

> S[ubs]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, [subs]ection 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-

---

[6] Because we conclude that the orphans' court abused its discretion by denying termination of Father's parental rights pursuant to subsection 2511(a)(1), we need not consider Petitioners' fourth and fifth issues, in which they argue that the court abused its discretion by denying termination pursuant to subsection 2511(a)(2).

interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and

citations omitted)).

In this case, Petitioners contend that the Children have no relationship with Father, and that they view Stepfather as their father. Petitioners' Brief at 30-32. Petitioners argue that the termination of Father's rights would not be due solely to environmental factors beyond his control, and emphasize that the Children's legal counsel and GAL both supported termination. *Id.*

The orphans' court provided the following analysis in its opinion.

> Finally, although the second-half of the bifurcated analysis is not required unless the Court finds that a particular ground under [subs]ection 2511(a) is met, [] [P]etitioners would nonetheless need to prove that the [C]hildren's developmental, physical and emotional needs and welfare would be served by termination.

> [Petitioners] asserted that the [C]hildren do not have a relationship or a necessary and beneficial bond that needs to be preserved. Testimony revealed that [L.A.K.], the older child, refers to Father as "Old Dad," which is evidence of at least some kind of relationship between the two of them. Continuing to

develop a relationship between Father, and by extension the parental side of the family tree, and the [C]hildren may serve the[ir] emotional well-being in the long run. To that end, the custody order following the Custody Conciliation Conference recognized this important fact by encouraging the family to be reintroduced to Father in a therapeutic setting. The Court did not find that sufficient evidence was produced to demonstrate that the developmental, physical and emotional needs of the [C]hildren would be served by termination of Father's parental rights.

For these reasons, the Court found that [Petitioners] did not meet their burden under [subs]ection 2511(b).

Orphans' Court Opinion, 10/23/2020, at 6-7.

Once again, it is undisputed that Father has not had contact with the Children since January 2016. N.T., 7/22/2020, at 9-14, 43, 48, 55, 63, 74, 87, 111-17, 120-25, 132-35. A.L.K. was only ten months old at that time, and L.A.K. was three years old. Father acknowledged at the hearing that A.L.K. would not know who he is, given her age at the time she last saw him. *Id.* at 129. As for L.A.K., Petitioners testified that he had only a vague recollection of Father and could not even recognize a picture of him. *Id.* at 23, 58. The Children's legal counsel and GAL agreed with Petitioners' characterization. *Id.* at 151-52, 158. Indeed, both Mother and the GAL suspected that L.A.K.'s recollections of Father were a product of his imagination. *See id.* at 22-23, 158 (the GAL explaining, "[L.A.K.] told a couple stories that . . . didn't seem to be based in reality. They weren't flattering, but they were also slightly outlandish, so he brought no memories that seemed to be rational to the table."). It was plainly unreasonable for the orphans' court to conclude that L.A.K. and Father maintain a relationship

- 15 -

under these circumstances, simply because L.A.K. knows Father exists and refers to him as "Old Dad."

Moreover, the bond analysis that subsection 2511(b) prescribes is not whether a child has "at least some kind of relationship" with his or her parent. Orphans' Court Opinion, 10/23/2020, at 6. The analysis is whether that relationship is "'necessary and beneficial'" to the child, and whether severing that relationship would cause him or her "'extreme emotional consequences.'" *In re Adoption of J.N.M.*, 177 A.3d 937, 944 (Pa. Super. 2018) (quoting *In re E.M.*, 620 A.2d 481, 484-85 (Pa. 1993)). It is apparent in this case, given Father's dearth of contact with the Children, that no such relationship exists. In Father's absence, Stepfather has provided the Children with consistent parental care. N.T., 7/22/2020, at 17-19, 22-25, 55-56, 59. The Children view Stepfather as their father, and he is the one with whom they have a meaningful relationship. *Id.* The finding by the orphans' court that developing a relationship between the Children and Father "may serve the emotional well-being in the long run" is speculative and contrary to the Children's need for security and stability. Orphans' Court Opinion, 10/23/2020, at 6; *see In re Adoption of J.M.*, 991 A.2d 321, 325 (Pa. Super. 2010) ("S[ubs]ection 2511(b) requires the trial court to determine what effect breaking an existing parent-child bond will have on the child currently, not

speculating whether a bond may be formed in the future.").[7]  Thus, we conclude that the court abused its discretion by denying the petitions to terminate Father's parental rights pursuant to subsection 2511(b).

Based on the foregoing analysis, the orphans' court abused its discretion by denying the petitions to terminate Father's parental rights to the Children involuntarily pursuant to subsections 2511(a)(1) and (b).  We therefore reverse the court's August 27, 2020 order and remand for the court to enter an order terminating involuntarily Father's parental rights.

Order reversed.  Case remanded for further proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judge Murray joins the memorandum.

Judge Strassburger did not participate in the consideration or decision of this case.

---

[7] To be clear, we are not minimizing the potential of a child's desire to know a parent and understand the child's roots. In fact, the Legislature contemplated such a need by its passage of Subchapter D of Chapter 27 of the Adoption Act, commonly referred to as Act 101. ***See*** 23 Pa.C.S. §§ 2731-2742) (providing for voluntary agreement to have post-adoption communication or contact with a child's birth relatives). But in the instant case, the finding that the Children's most pressing need is the possibility of developing a relationship with Father, who has been absent for most of their young lives due to his own instability, is contrary to the law pertaining to needs and welfare under the Adoption Act.

- 17 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/26/2021